IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHTEK TECHNOLOGY CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>UPI SEMICONDUCTOR CORPORATION, *et al.*,<br><br>    Defendants.<br>_____ / | No. C 09-05659 WHA<br><br>**ORDER PARTIALLY GRANTING MOTION FOR STAY, DENYING LEAVE TO FILE MOTION FOR PRELIMINARY INJUNCTION, AND VACATING HEARING** |

**INTRODUCTION**

In this patent and copyright infringement action, three corporate defendants move to stay the action pending reexamination of the patents-in-suit. This order grants the motion.

**STATEMENT**

This action was filed in December 2009, and then was stayed the following month pending the outcome of Investigation No. 337-TA-698 before the United States International Trade Commission. The ITC investigation was terminated in September 2010, and the stay of this action was lifted the following month (Dkt. No. 89). The ITC investigation concerned the same three patents, the same category of accused products, and some of the same defendants that are at play in this action. The ITC entered stipulated consent orders against defendants uPI Semiconductor Corporation and Sapphire Technology Limited in August 2010.

The third amended complaint, filed in September 2010, is currently operative, but it has been significantly narrowed via robust motion practice. The operative complaint was filed by the Taiwanese company Richtek Technology corporation and its wholly-owned United States subsidiary, Richtek USA, Inc. The complaint named seventeen individuals and five companies as defendants, and alleged seven claims for relief in total. After the first round of motions to dismiss, all claims against fourteen Taiwanese individuals were dismissed for lack of personal jurisdiction, and all claims for breach of contract and trade-secret misappropriation were dismissed for lack of subject-matter jurisdiction. After the second round of motions to dismiss, the copyright claim against Maxchip Electronics Corporation was dismissed for inadequate pleading pursuant to FRCP 12(b)(6), and jurisdictional discovery was allowed regarding personal jurisdiction over defendant Powerchip Technology Corporation. After a third round of motions to dismiss, all claims against Canadian individual Ming Chen were dismissed for inadequate pleading pursuant to FRCP 12(b)(6). Because Richtek USA was a complaining plaintiff only for the trade-secret-misappropriation claim, which was dismissed in the first round of motions, Richtek USA is no longer a party to this action.

The only claims for relief that now remain in the action are the patent-infringement claims against defendant Maxchip, and the patent- and copyright-infringement claims against the other four corporate defendants and two remaining individual defendants. The patent-infringement claims for relief (counts 1–3) assert the following three United States patents: No. 7,315,190; No. 6,414,470; and No. 7,132,717. The copyright-infringement claim for relief (count 7) refers to a list of United States copyright registrations that allegedly cover "design schematics, software code, mask works, data sheets and other copyrightable expressions related to Richtek's proprietary design-in process for semiconductors" (Compl. ¶ 75).

The factual theory of Richtek's complaint is that Taiwanese former employees of Richtek Technology, along with Powerchip and uPI (both Taiwanese companies), "devised a complex and elaborate scheme to steal, plunder, and cart-away Richtek's invaluable trade secret and confidential information" (id ¶ 62). Using proprietary documents and information stolen from their former employer, the individual defendants allegedly designed competing power-

management products that infringed Richtek's intellectual property rights. Defendant uPI allegedly then developed and sold these products in conjunction with other defendants. Richtek claims that it has been injured by sales of these power-management products to customers in California and the United States.

Defendants uPI, Sapphire, and Silicon XTAL Corporation now move to stay the entire action pending reexamination of the three patents-in-suit. Requests for reexamination of these patents were filed with the United States Patent and Trademark Office in August 2010 (Kwon Exh. B–D). The USPTO granted these requests in October and November 2010 (Kwon Exh. E–G). In December 2010, the USPTO issued a first office action in connection with the reexamination of the '190 patent, in which it rejected all asserted claims of that patent (Kwon Exh. H). No other office actions have yet been issued in connection with the reexamination of the patents-in-suit. The three moving defendants represent that the other two corporate defendants (Powerchip and Maxchip) do not oppose the instant motion. Plaintiff Richtek, however, does oppose staying the action. This order follows full briefing on the motion.

**ANALYSIS**

The decision to stay a case pending resolution of a reexamination at the USPTO is within the discretion of a district court. *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983). A stay pending reexamination is justified where "the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *See, e.g., Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998). It has been the undersigned's normal practice to deny motions for such a stay absent extraordinary circumstances. In determining whether to stay an action pending reexamination, district courts consider the following factors: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *E.g.*, *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006)

(Wilken, J.). On the present record, these factors favor a stay, and the fact that Richtek already has obtained relief from the ITC makes this an exceptional case.

### 1. STATUS OF DISCOVERY AND CASE DEVELOPMENT.

Despite having been filed over a year ago, this action is in its early stages. Trial is not set to begin for nearly a year, claim construction is still months away, and no summary judgment motions have been filed. Expert discovery has not commenced, and fact discovery is not set to close for another eight moths. Richtek, however, argues that allowing the use of the ITC discovery in this action "would quickly make discovery in this case virtually complete" (Opp. 9). The qualifiers in this statement — *would* and *virtually* — are telling. The parties vigorously dispute whether the ITC discovery can be imported into this action *en masse*, and the thorny issues surrounding this question (*e.g.*, the treatment of third-party confidential business information) have yet to be resolved. Even if these issues were overcome and the ITC discovery were imported wholesale, discovery would by no means be complete. Only three of the seven remaining defendants in this action were respondents in the ITC investigation, so discovery would still need to be undertaken from scratch as to the other four defendants. Moreover, this action raises a variety of issues that were not reached in the ITC investigation (*e.g.*, damages, willfulness, and copyright infringement) and which will require fresh discovery involving all defendants. The fact remains that this action is in its early stages; substantial resources have not yet been invested in discovery, claim construction, or trial preparation. Accordingly, the first factor weighs in favor of a stay.

### 2. SIMPLIFICATION OF ISSUES AND TRIAL.

In granting the reexamination requests for all three patents-in-suit, the USPTO indicated that a "substantial new question of patentability" has been raised as to each of the patents. 35 U.S.C. 303(a). If any of the asserted claims are cancelled, the ordeals of claim construction and trial will become unnecessary for those claims. If any of the asserted claims are amended, the contours of claim construction and trial will likely be different as a result. Even if none of the asserted claims are cancelled or amended, this action will be shaped by the richer prosecution

history available to inform the claim construction process. *See Gould*, 705 F.2d at 1342. Now that the reexamination train has left the station, all claim construction bets are off.

Richtek advances three arguments as to why a stay would not simplify the issues in this action; none is compelling. *First*, Richtek notes that the patent reexamination process will not resolve the copyright claims. This observation is correct, but it does not diminish the likelihood that the patent claims for relief, which are the true meat and potatoes of this action, will be simplified through reexamination. *Second*, Richtek notes that the USPTO has not yet issued any final office action regarding the patents-in-suit, so the outcome of the reexaminations remains speculative. This observation also is correct, but regardless of the outcome, the reexamination process is likely to shape and simplify these proceedings.

Third, Richtek argues that substantial progress could be made by forging on with claim construction. Any such progress, however, would come with the risk of wasted effort, given that cancellation or amendment of the construed claim terms likely would render these claim construction exercises obsolete. Richtek cites the Federal Circuit decision in *Ethicon v. Quigg* for the proposition that the "issue of validity is solely for this Court to decide and its decision is not affected in any way by proceedings at the PTO" (Opp. 10). The cited *Ethicon* decision contains no such holding. On the contrary, it merely holds that the USPTO may not suspend a reexamination proceeding pending a district court's determination of a patent's validity, in part because doing so would frustrate "one purpose of the reexamination procedure" — "to eliminate trial of [a patent claim validity] issue (when the claim is cancelled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988). Richtek also makes much of the facts that the parties "have already engaged in claim construction by exchanging proposed terms for construction" and that claim construction discovery is underway (Opp. 10). The scheduled claim construction hearing, however, is still more than three months away. The vast majority of the claim construction work remains to be done, and it would serve the interests of all involved for it to be done only once. The second factor weighs in favor of a stay.

5

### 3. IMPACT ON NONMOVING PARTY.

Because Richtek already has obtained relief from another tribunal, it will not be unduly prejudiced or placed at a clear tactical disadvantage by a stay of this action. In August 2010, the ITC issued consent orders in which defendants uPI and Sapphire agreed to the following provision:

> Effectively immediately upon the entry of this Consent Order, [uPI/Sapphire] will not import into the United States, sell for importation into the United States, or sell or offer for sale in the United States after importation, or knowingly aid, abet, encourage, participate in, or induce importation into the United States, the sale for importation into the United States, or the sale, offer for sale, or use in the United States after importation, without the consent or agreement of [Richtek], any DC-DC controllers or products containing same which [allegedly infringe / are allegedly covered by] claims 1–11, 26 or 27 of [the '190 patent], claims 29 or 34 of [the '470 patent], or claims 1–3 or 6–9 of [the '717 patent], or which are produced using or which contain Richtek's asserted trade secrets.

(Kwon Exh. A). This consent order addresses the same category of accused products and the exact same patent claims that are asserted in the instant action. Because this action and the ITC investigation both target the same distribution chain, Richtek should be able to stem all or most of its alleged harm through enforcement of the ITC consent orders. Richtek insists that the ITC consent orders are inadequate and that it will suffer irreparable harm if this action is stayed. Indeed, Richtek focuses the largest portion of its opposition brief on this point. But none of Richtek's arguments on irreparable harm are persuasive.

*First*, Richtek "believes that uPI's accused products are still being sold in the United States despite the existence of the Consent Orders" (Opp. 5). One explanation Richtek offers for this belief is Richtek's further "belie[f]" that uPI is "remarking its old products with new part numbers" and "marking its products with a manufacturing date before the enforcement date, even though the products were actually manufactured after that date" (*ibid.*). A second explanation is that uPI allegedly stockpiled and now continues to sell products whose manufacture in Taiwan "may pre-date" the consent orders (*ibid.*). If these beliefs are borne out by fact, then uPI's evasion of the ITC order could be curbed and punished by the ITC. Richtek admits, however, that it "may not meet the threshold requirement to institute an enforcement proceeding with the ITC"

6

because it lacks knowledge of "when these uPI products were actually made and sold by uPI" (*ibid.*). Richtek's eligibility to institute an ITC enforcement proceeding and any discovery that Richtek might need in order to do so are matters best to be sorted out between Richtek and the ITC. In the meanwhile, Richtek's speculative beliefs are insufficient to demonstrate a likelihood of irreparable harm following a stay of the action before this district court.

*Second*, Richtek notes that a district court is able to grant relief broader than that available from the ITC, because an injunction issued by a district court need not be tied to importation or to a particular manufacture date (Opp. 6–7). This argument is a nonstarter. As to importation, Richtek alleges that all of the accused products in this action are designed by uPI, manufactured by Maxchip or Powerchip in Taiwan, and then incorporated into other downstream products sold in the United States. Because all of the accused products are manufactured in Taiwan, they all must be imported before they can be used, sold, or offered for sale *in the United States*. The importation requirement in the ITC consent orders therefore does not narrow the scope of these orders in any meaningful way with respect to the products accused in this action. As to manufacture date, the ITC consent orders do not contain any mention of a manufacture date limitation. By their own plain language, the ITC orders proscribe certain *actions* by uPI and Sapphire — including selling or knowingly aiding others in selling accused products that have been imported into the United States. The dates on which the products were manufactured or imported are irrelevant to this ban on sales. If uPI and Sapphire are still selling (or helping others sell) accused products that were imported into the United States, then Richtek has recourse available in the form of ITC enforcement proceedings on the consent orders.

*Third*, Richtek notes that certain defendants in this action are not subject to the ITC consent orders. Richtek argues that Powerchip, Maxchip and Silicon XTAL "may continue to manufacture, sell, offer to sell and import the accused uPI products" and emphasizes that "uPI and Sapphire specifically *refused* to include language in their Consent Orders precluding their officers, directors, employees and agents from engaging in the conduct prohibited by the Consent Order" (Opp. 7). If Richtek was so concerned about the nefarious intent of uPI and Silicon's officers and suppliers, then perhaps Richtek should have rejected the language its opponents

7

proposed for the consent orders and litigated the ITC investigation to the possible result of a general exclusion order, which would have applied to all accused products regardless of their source. Richtek is correct that, as a result of its tactical decision to agree to the language of the ITC consent orders, everyone in the world besides uPI and Sapphire remains free to import and deal in the accused products without running afoul of those orders. Richtek, however, has not presented convincing evidence that the other defendants in *this* action are doing so. While "there is nothing to prevent the individuals at uPI from setting up shop under a different corporate name and engaging in the conduct prohibited by the Consent Order" (*ibid.*), there also is nothing in the record that suggests they have done so. Richtek cites sworn testimony that various accused products remain on the United States market in downstream products and stores, but the fact that accused products have been discovered on the market does not imply that responsibility for these continued sales rests with any of the defendants in this action.

If uPI and Sapphire are violating or evading the ITC consent orders, then Richtek's best available recourse is an enforcement proceeding before the ITC. As to acts and defendants that would fall beyond the scope of the ITC consent orders, Richtek has not provided any evidence that such circumstances explain the continued presence in California computer stores of downstream products that incorporate the accused products. Indeed, Richtek's claim that it would suffer irreparable harm if this action were stayed is undercut by the lack of urgency with which it has pursued (or failed to pursue) available interim remedies. Richtek has not attempted to institute an enforcement proceeding before the ITC, and Richtek has not filed a motion for a preliminary injunction in this year-and-change-old district court action. Although Richtek expressed intent to eventually file a preliminary injunction motion at the October 2010 case management conference and in its early January discovery dispute letter brief, it did not even request permission to file such a motion until nearly a week after motion practice was suspended in mid-January (Dkt. Nos. 108 at 14, 229 at 2, 242). If the threat of irreparable harm truly were imminent, then Richtek would not have dragged its feet this long. Richtek has not shown that it would suffer irreparable harm or clear tactical disadvantage as a result of a stay of this action. The third factor weighs in favor of a stay.

8

\*          \*          \*

All three factors favor a stay, and the fact that the party opposing the stay already has received relief from another tribunal makes this a procedurally exceptional case. Accordingly, the motion to stay the action pending reexamination of the patents-in-suit is **GRANTED IN PART**. Although the copyright claim for relief will not be resolved by the patent reexamination proceedings, a stay of that portion of the action is appropriate in light of the stay to be placed on litigating the other claims for relief. Richtek's copyright claim arises from the same basic factual theory as its patent claims for relief, so discovery for the copyright and patent portions of the action will be inextricably intertwined. Accordingly, a partial stay of the action that applied only to the patent claims for relief and allowed piecemeal discovery and litigation to move forward on the copyright claim simply would create a mess. Richtek consistently has treated its copyright claim as an afterthought, and on the instant motion it has not argued or submitted any evidence that its copyright claim requires immediate resolution. The interests of judicial economy and efficient case management will be served better by a stay of all, rather than three quarters, of Richtek's remaining claims for relief.

On the other hand, the personal jurisdictional discovery underway concerning defendant Powerchip should continue despite the stay (Dkt. No. 235). The question of personal jurisdiction over Powerchip is a relatively discrete issue, and the resolution of this question sooner rather than later is likely preferable to all involved. Counsel must remember that discovery that happens to bear on the merits is allowable so long as it relates to the jurisdictional issue. In light of the stay, perhaps Powerchip will prefer to submit to the jurisdiction of the Court rather than face discovery. If so, any such general appearance must be made by **NOON ON FEBRUARY 11, 2011**.

\*          \*          \*

In a letter brief regarding a discovery dispute filed on January 10, 2011, Richtek indicated its intent to file a motion for a preliminary injunction (Dkt. No. 229). Richtek promptly was instructed that it "shall file no motion for a preliminary injunction without explaining why said motion is not being filed before the ITC rather than before this district court" (Dkt. No. 230). Due to the excessive use of motion practice in this action, a complete halt was put on the filing of

9

new motions on January 14, 2011 (Dkt. No. 235). Five days later, Richtek filed a request for leave to file a motion for preliminary injunction, along with an explanation why the relief was sought from this court rather than the ITC (Dkt. No. 242). Indeed, Richtek references its desire for a preliminary injunction throughout its opposition to the instant motion for a stay.

A district court "ordinarily should not grant both a preliminary injunction and a stay." *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008). The reason that a stay normally precludes a preliminary injunction is that a "preliminary injunction should not be granted if there is a substantial issue of patent validity." *Ibid.* In light of the stay of this action and the substantial issues of patent validity raised by the reexaminations of the patents-in-suit, Richtek's request for leave to file a motion for a preliminary injunction is **DENIED**.

## CONCLUSION

For the foregoing reasons, the motion to stay the action pending reexamination of the patents-in-suit is **GRANTED IN PART**. Richtek's request for leave to file a motion for a preliminary injunction is **DENIED**. Except for the jurisdictional discovery allowed in the January 14 order (Dkt. No. 235), the entire action is hereby **STAYED** pending conclusion of the USPTO reexaminations of the patents-in-suit. If Powerchip now prefers to submit to the jurisdiction of the Court, it must make a general appearance by **NOON ON FEBRUARY 11, 2011**. The motion hearing set for February 10, 2011, is **VACATED**. The hearing on Richtek's discovery dispute set for February 15, 2011, is **VACATED**. The parties shall file a joint status report on **DECEMBER 15, 2011**, or within **TEN DAYS** after the conclusion of the reexaminations, whichever is earlier.

**IT IS SO ORDERED.**

Dated: February 3, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10